**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION – CINCINNATI**

TAMMY E. YOUNG,          :     Case No. 1:24-cv-134

            Plaintiff,    :     Judge Matthew W. McFarland

      v.              :

KOHL'S, INC.,         :

            Defendant.   :

---

## ORDER AND OPINION

---

This matter is before the Court on Defendant's Motion for Summary Judgment (Docs. 7, 10). Plaintiff filed a Response in Opposition (Doc. 17), to which Defendant filed a Reply in Support (Doc. 18). Plaintiff then filed a Sur-Reply (Doc. 19). Thus, this matter is ripe for the Court's review. For the following reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment (Doc. 10).

## BACKGROUND

On October 28, 2023, Plaintiff Tammy Young was shopping at Defendant Kohl's, Inc.'s store in West Chester, Ohio. (Plaintiff's Dep., Doc. 8-1, Pg. ID 61; Compl., Doc. 4, ¶¶ 1-2.) After selecting some merchandise, she walked to the women's restroom and set the items on the counter outside. (Plaintiff's Dep., Doc. 8-1, Pg. ID 61.) As Plaintiff opened the door and entered the restroom, she realized that "something had hold of [her] right foot but [was] not sure what was happening." (*Id.*) Plaintiff then fell to the ground and

broke her arm. (*Id.* at Pg. ID 61-62, 64.) As for the cause of the fall, Plaintiff determined that the doorstop had caught one of the "big loops" on her tennis shoes. (*Id.* at Pg. ID 62.)

The following details further set the scene. Plaintiff testified that she was not distracted when she fell. (Plaintiff's Dep., Doc. 8-1, Pg. ID 63.) While somebody was at the sink, nobody was entering or leaving through the doorway at the time. (*Id.* at Pg. ID 62.) Plaintiff did not see the doorstop before falling; rather, she was "looking straight ahead" while walking into the restroom. (*Id.* at Pg. ID 63.) Moreover, Plaintiff is not sure whether the doorstop was up or down when her shoelace got caught. (*Id.*) She "assumes" that it "would have had to have been up, because it went in—down into [her shoelace] loop." (*Id.*)

Plaintiff returned to the site of the incident a week or two later and took several photographs of the same kick-down doorstop in question. (Plaintiff's Dep., Doc. 8-1, Pg. ID 62.) These images document the doorstop's location on the bottom corner of the door. (Photographs, Exhibits 1-3, Doc. 8-1, Pg. ID 77-79.) The silver doorstop was attached to a silver kickplate at the bottom of the door. (*Id.*) During this same visit, Plaintiff also took a video of the kick-down doorstop in action. (Plaintiff's Dep., Doc. 8-1, Pg. ID 63.) It appears that the doorstop would fall to the ground when lifted to various heights. (*Id.*; Video Filing, Doc. 11.) However, the video does not show whether the doorstop would remain upright if originally placed in the upright position. (Video Filing, Doc. 11.) When questioned as to whether she had ever flipped the doorstop to the fully upright position to see if it would stay, Plaintiff responded: "I don't recall. I don't—I don't think so."

2

(Plaintiff's Dep., Doc. 8-1, Pg. ID 63.) The video demonstrates that, once fully down, the doorstop would not prevent the door from sliding closed. (*Id.*; Video Filing, Doc. 11.)

In May 2024, more than six months after the incident, Stephanie Smith—an Area Supervisor at the Kohl's in question—submitted a work order for the doorstop to be replaced since "[i]t does not stick up and is a trip hazard." (Smith Dep., Doc. 16, Pg. ID 128, 132-33, 137; Repair Form, Doc. 16-1, Pg. ID 147.) The doorstop was then replaced. (Smith Dep., Doc. 16, Pg. ID 134-35; Repair Form, Doc. 16-1, Pg. ID 147.) Despite walking through the women's bathroom doorway once or twice a workday, Smith does not recall ever personally experiencing problems with the doorstop or anybody other than Plaintiff getting hurt on the doorstop. (Smith Dep., Doc. 16, Pg. ID 130, 135-36, 138.)

On February 12, 2024, Plaintiff filed suit against Defendant in state court for a single count of negligence. (*See* Compl., Doc. 4.) On March 15, 2024, Defendant removed the action to this Court based upon diversity jurisdiction. (Notice of Removal, Doc. 1.) Defendant then filed its Motion for Summary Judgment on July 15, 2025, and it has since been fully briefed. (*See* Motion, Doc. 10; Response, Doc. 17; Reply, Doc. 18; Sur-Reply, Doc. 19.)

## LAW

A court must grant summary judgment if the record "reveals that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014) (citing Fed. R. Civ. P. 56(c)). In making this determination, a court views the evidence in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The

moving party has the burden to conclusively show that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994). This can be accomplished by highlighting the lack of admissible evidence to support the nonmoving party's case. *See* Fed. R. Civ. P. 56(c)(1)(B); *Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 566 (6th Cir. 2001). If the moving party meets this burden, it then becomes the nonmoving party's responsibility to put forth affirmative evidence to demonstrate a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 257 (1986).

Notably, a "mere scintilla" of evidence in support of the nonmoving party's position or "some metaphysical doubt as to the materials facts" is not enough to avoid summary judgment. *Daniels v. Woodside*, 396 F.3d 730, 734 (6th Cir. 2005); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). By a similar token, "Mere speculation will not suffice to defeat a motion for summary judgment: the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment." *Griffin v. Jones*, 170 F. Supp. 3d 956, 963 (W.D. Ky. 2016) (cleaned up). To preclude summary judgment, the nonmoving party must point to probative evidence on which a jury could reasonably reach a verdict in that party's favor. *Daniels*, 396 F.3d at 734. If the nonmoving party fails to make the necessary showing for an element on which it has the burden of proof, then the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323.

4

## ANALYSIS

To succeed with a negligence claim under Ohio law, a plaintiff must show "(1) that the defendant owed the plaintiff a duty, (2) that the defendant breached that duty, and (3) the breach of the duty proximately caused the plaintiff's injury." *Vanderbilt v. Pier 27, LLC*, 2 N.E.3d 966, 970 (Ohio Ct. App. 2013).

### I.     Open and Obvious

In framing the initial question of duty, both parties agree that Plaintiff was Defendant's business invitee. (*See* Motion, Doc. 10, Pg. ID 91; Response, Doc. 17, Pg. ID 152.) Defendant therefore bore "a duty of ordinary care in maintaining the premises in a reasonably safe condition so that its customers," like Plaintiff, were "not unnecessarily and unreasonably exposed to danger." *Paschal v. Rite Aid Pharmacy, Inc.*, 18 Ohio St. 3d 203, 203 (Ohio 1985). The owner of a premises must "warn its invitees of latent or hidden dangers." *Johnson v. Am. Italian Golf Ass'n of Columbus*, 113 N.E.3d 1144, 1150 (Ohio Ct. App. 2018) (quotation omitted). But, the owner is not an "insurer of the customer's safety" and need not provide warnings about "open and obvious" dangers. *Paschal*, 18 Ohio St. at 203. "The rationale behind [this] doctrine is that the open and obvious nature of the hazard itself serves as a warning." *Simmers v. Bentley Constr. Co.*, 64 Ohio St. 3d 642, 644 (Ohio 1992).

Defendant argues that it is entitled to summary judgment because the hazard posed by the doorstop was open and obvious. (Motion, Doc. 10, Pg. ID 91-94.) Given that "the open-and-obvious doctrine obviates the duty to warn and acts as a complete bar to any negligence claims," it "relates to the threshold issue of duty." *Armstrong v. Best Buy*

5

*Co.*, 99 Ohio St. 3d 79, 80, 82 (Ohio 2003). The applicability of the open-and-obvious doctrine turns on whether the hazard was observable "in plain view and readily discoverable upon ordinary inspection." *Mohn v. Wal-Mart Stores, Inc.*, 2008-Ohio-6184, 2008 WL 5053445, at *4 (Ohio Ct. App. Dec. 1, 2008); *see also Ward v. SKH Grp. LLC*, 228 N.E.3d 1240, 1247 (Ohio Ct. App. 2023). Notably, this is an objective determination made by considering whether "the danger would have been discernible to a reasonable person"—not whether "the plaintiff actually observed the danger." *Coldren v. Northview Shopping Plaza, LLC*, 214 N.E.3d 1243, 1251 (Ohio Ct. App. 2023) (quotations omitted); *see also Hernandez-Butler v. Ikea U.S. E., LLC*, 435 F. Supp. 3d 816, 823 (S.D. Ohio 2020).

In light of this standard, "the question of whether a danger is open and obvious is highly fact-specific." *Allen v. Rankin*, 2013-Ohio-456, 2013 WL 504867, at *8 (Ohio Ct. App. Jan. 29, 2013); *see also Kidder v. Kroger Co.*, 2004-Ohio-4261, 2004 WL 1802050, at *3 (Ohio Ct. App. Aug. 13, 2004) (quotation omitted) (observing that "comparing the facts of a given case with other cases is of limited value" within this context). "Where reasonable minds could differ with respect to whether a danger is open and obvious, the obviousness of the risk is an issue for the jury to determine." *Hernandez-Butler*, 435 F. Supp. 3d at 823 (quotation omitted). Conversely, "if a court determines that a jury would necessarily conclude that the hazard was open and obvious, summary judgment is appropriate, as the premises owner has no duty." *Id.* (citing *Armstrong v. Best Buy*, 99 Ohio St. 3d 79 (Ohio 2003)); *see also Johnson v. Southview Hosp.*, 2012-Ohio-4974, 2012 WL 5292988, at *4 (Ohio Ct. App. Oct. 26, 2012) (explaining that, in "many instances, this determination can be made as a matter of law").

As a preliminary matter, the Court clarifies that the proper inquiry is not necessarily whether the doorstop itself was open and obvious but, instead, whether the *hazard* presented by the doorstop was open and obvious. *See Hernandez-Butler*, 435 F. Supp.3d at 824; *McClain v. The Drinkery*, 180 N.E.3d 1254, 1258 (Ohio Ct. App. 2021). This distinction is worth highlighting at the outset given that Plaintiff's argument involves claims that the doorstop itself was defective "in that it would easily fall and not remain in an upright position when the door was opened." (Response, Doc. 17, Pg. ID 153.) Put differently, Plaintiff seems to posit that the hazard posed by the doorstop is twofold: a reasonable person would not notice the doorstop itself and, in any event, would not readily observe that it was defective. (*Id.* at Pg. ID 154.) The Court considers each thread of this argument in turn.

Starting with the doorstop itself, Defendant first emphasizes that Plaintiff — despite testifying that she was not distracted — failed to observe the doorstop before falling because she failed to look down. (Motion, Doc. 10, Pg. ID 93; Plaintiff's Dep., Doc. 8-1, Pg. ID 63.) Plaintiff responds by citing to the Supreme Court of Ohio's decision in *Texler v. D.O. Summers Cleaners & Shirt Laundry Company* for the proposition that "'[a] pedestrian using a public sidewalk . . . is not, as a matter of law, required to look constantly downward.'" 81 Ohio St. 3d 677, 680 (Ohio 1998) (quoting *Grossnickle v. Germantown*, 3 Ohio St. 2d 96, 96 (Ohio 1965)); (Response, Doc. 17, Pg. ID 152). The court in *Texler* also explained in the same breath that a pedestrian "is under a duty to use care reasonably proportioned to the danger likely to be encountered." *Texler*, 81 Ohio St. 3d at 680. Analogizing the public sidewalk realm to the context at hand, a reasonable

7

individual is expected to take reasonable care while walking through a store and opening doors. *See Coldren*, 214 N.E.3d at 1251; *Ward*, 228 N.E.3d at 1247. Thus, while a "plaintiff's failure to look where [she] is walking is not alone necessarily dispositive," she is still expected to exercise reasonable care. *Ellington v. JCTH Holdings, Inc.*, 2015-Ohio-840, 2015 WL 1019458, at *6 (Ohio Ct. App. Mar. 2, 2015); *see also Butler v. TriHealth, Inc.*, 203 N.E.3d 751, 756 (Ohio Ct. App. 2022); *Sexton v. Certified Oil Co.*, 2013-Ohio-482, 2013 WL 557174, at *5 (Ohio Ct. App. Feb. 7, 2013).

The Court therefore next considers the physical placement and appearance of the doorstop. *See Ward*, 228 N.E.3d at 1246. As Defendant points out, the kick-down doorstop was located where a reasonable person may expect one — the bottom corner of the door. (Motion, Doc. 10, Pg. ID 93; Photographs, Exhibits 1-3, Doc. 8-1, Pg. ID 77-79.) Additionally, based on Plaintiff's identification of the bathroom floor tile, the record suggests that the doorstop was located on the exterior side of the door facing outside of the restroom. (*See* Plaintiff's Dep., Doc. 8-1, Pg. ID 62; Photograph, Exhibit 4, Doc. 8-1, Pg. ID 80.) Plaintiff fell when she was entering the restroom, and she does not contest that she had a sufficient opportunity to observe the door and doorstop. (Plaintiff's Dep., Doc. 8-1, Pg. ID 61-63.)

Ohio courts have "recognized that even an obstruction that sits low to the ground in an area frequented by customers may be open and obvious as a matter of law, so long as it is not concealed." *Coldren*, 214 N.E.3d at 1251 (cleaned up). While the Court acknowledges that each case must be taken on its own specific facts, the following corpus of case law lends credence to the conclusion that the doorstop was open and obvious in

this particular situation. *See, e.g., Norman v. BP Am., Inc.*, No. 97APE06-790, 1997 WL 703383, at \*1-2 (Ohio Ct. App. Nov. 4, 1997) (affirming that a six-by-two-inch wooden door prop was open and obvious); *Lambert v. Up Cincinnati Race, LLC*, 204 N.E.3d 782, 789 (Ohio Ct. App. 2022) (affirming that a riser at the doorway was open and obvious because the risk that one may trip over it was "immediately apparent on ordinary inspection"); *City of Drumright v. Moore*, 197 Okla. 306, 308 (Okla. 1946) (concluding that a doorstop was open and obvious, as well as noting that "a large number of people had passed through the doorway without sustaining any injury"); *Beach v. Wal-Mart Stores E., Inc.*, No. 2:15-CV-1123, 2016 WL 7223392, at \*4 (S.D. Ohio Dec. 13, 2016) (finding that the legs of the clothing rack were open and obvious since they were "visible in plain sight").

Plaintiff also contends that the silver doorstop blended into the silver kickplate. (Response, Doc. 17, Pg. ID 154.) "[I]t is apparent that a hazard's color and the color of its surroundings may be relevant to whether the hazard is open and obvious, but that information is not necessarily determinative of the issue by itself." *Leitch v. Wal-Mart, Inc.*, No. 3:19-CV-235, 2020 WL 7398700, at \*5 (S.D. Ohio Dec. 17, 2020) (collecting cases). After examining the photographs and video, the Court finds the doorstop to be a similar silver color as the kickplate but contrasting a bit from the color of the floor. (*See* Photographs, Doc. 8-1, Pg. ID 77-80; Video Filing, Doc. 11.) Additionally, the appearance and placement of the doorstop itself distinguish this case from those cited by Plaintiff that involve a clear liquid or a raised threshold that appeared to be part of a door. (*See* Response, Doc. 17, Pg. ID 153 (citing *Heckman v. Mayfield Country Club*, 2007-Ohio-5330, 2007 WL 2875175, at \*3 (Ohio Ct. App. Oct. 4, 2007); *Kidder*, 2004 WL 1802050, at \*3)). In analyzing this evidence,

9

the Court appreciates that the relevant question is not whether the owner made the condition "perfect or foolproof" and finds that the doorstop was open and obvious. *Goodson v. Millennium & Copthorne Hotels*, No. 1:13-CV-502, 2015 WL 74271, at *5-7 (S.D. Ohio Jan. 6, 2015) (collecting cases in which courts concluded that a hazard was open and obvious despite uniform colors).

The Court now considers Plaintiff's argument that the doorstop was defective because "it would easily fall and not remain in an upright position when the door was opened." (Response, Doc. 17, Pg. ID 153.) In her Response, Plaintiff presents the theory that the doorstop fell from an upright position and caught her shoelace as she walked through the doorway. (*Id.* at Pg. ID 156.) For starters, the Court agrees with Defendant's assertion that there is no admissible evidence showing that the doorstop would not remain in its fully upright position or how much force would be needed for it to fall from its fully upright position. (*See* Reply, Doc. 18, Pg. ID 159.) Plaintiff did not observe the doorstop before or during the fall, and she did not testify as to whether the doorstop could remain in an upright position. (Plaintiff's Dep., Doc. 8-1, Pg. ID 61-63.) And, while Plaintiff has submitted a video of the doorstop falling to the ground from different heights, the video does not show the doorstop in the fully upright position. (Video Filing, Doc. 11.) In contrast, one of the photographs taken by Plaintiff a week or two after the incident shows the doorstop in the fully upright position without being held up. (Photograph, Exhibit 3, Doc. 8-1, Pg. ID 79; Plaintiff's Dep., Doc. 8-1, Pg. ID 62.)

Plaintiff, to be sure, points to her following testimony in response to the question about whether the doorstop was up or down when her foot got stuck: "I don't know. I'm

assuming it would have had to have been up, because it went in—down into my loop on my shoe." (Plaintiff's Dep., Doc. 8-1, Pg. ID 63.) Elsewhere, Plaintiff testified that she "knew something had hold of [her] right foot but [was] not sure what was happening" at the time she opened the door. (*Id.* at Pg. ID 61.) Given that Plaintiff did not see what happened and does not point to evidence that the doorstop defectively fell from an upright position to cause her to fall, Defendant counters that such speculation falls short. (Reply, Doc. 18, Pg. ID 160.)

When it comes to a negligence cause of action under Ohio law, "[i]t is incumbent on the plaintiff to [develop facts showing] how and why an injury occurred." *Boles v. Montgomery Ward & Co.*, 153 Ohio St. 381, 389 (Ohio 1950); *see also Strevel v. Fresh Encounter, Inc.*, 2015-Ohio-5004, 2015 WL 7777233, at *4 (Ohio Ct. App. Nov. 24, 2015); *Milatz v. City of Cincinnati*, 145 N.E.3d 1117, 1122 (Ohio Ct. App. 2019) (collecting cases). While the Court makes all reasonable inferences in Plaintiff's favor, speculation as to the cause of a fall or a defective condition does not replace probative evidence. *See, e.g., Niklas v. Joseph T. Ryerson & Son, Inc.*, 995 F.2d 1067 (Table), 1993 WL 177702, at *2 (6th Cir. 1993) (affirming summary judgment when the plaintiff speculated that the object was defective, especially since he "was not looking at his foot or the battery box when the accident occurred"); *Hochstetler v. Menards*, 688 F. App'x 381, 383-84 (6th Cir. 2017) (emphasizing the plaintiff's testimony that "she had no idea what caused the roll of carpet remnant to fall or how long it was in a position where it could fall"); *Cleveland Athletic Ass'n Co. v. Bending*, 129 Ohio St. 152, 154 (Ohio 1934) (reversing a judgment in favor of the plaintiff when she "testified she did not know on what her left foot caught"). "A probative

11

inference for submission to a jury can never arise from guess, speculation or wishful thinking." *Parras v. Standard Oil Co.*, 160 Ohio St. 315, 319 (Ohio 1953); *see also Griffin*, 170 F. Supp. 3d at 963. On this record, Plaintiff's testimony fails to create a genuine dispute as to any material fact in question.

Additionally, Plaintiff points to the fact that Stephanie Smith, an Area Supervisor at the relevant Kohl's, submitted the following "handyman services" request on May 10, 2024: "the door stopper on the women's restroom door needs to be replaced. It does not stick up and is a trip hazard." (Response, Doc. 17, Pg. ID 155; Smith Dep., Doc. 16, Pg. ID 132-33, 137; Repair Form, Doc. 16-1, Pg. ID 147.) But, as Defendant objects, Rule 407 of the Federal Rules of Evidence limits the admissibility of subsequent remedial measures. (Reply, Doc. 18, Pg. ID 162.) Specifically, "[w]hen measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove," among other things, "negligence," "a defect in a product," or "a need for a warning." Fed. R. Evid. 407; *see also Frye v. CSX Transp., Inc.*, 933 F.3d 591, 604 (6th Cir. 2019) (emphasizing that "a party should not be dissuaded from minimizing the risk of future harm for fear that such remedial measures will be used against the party"). The Court finds that this request to fix the doorstop plainly qualifies as a subsequent remedial measure and is therefore inadmissible for any of these aforementioned purposes. Plaintiff does not contest this conclusion or propose an otherwise admissible purpose. (*See* Sur-Reply, Doc. 19.)

In any event, assuming the admissibility of this work request arguendo, it was submitted over half a year after Plaintiff fell. (*See* Plaintiff's Dep., Doc. 8-1, Pg. ID 61;

12

Repair Form, Doc. 16-1, Pg. ID 147; Smith's Dep., Doc. 16, Pg. ID 137.) Plaintiff does not cite any evidence within this six-month interim as to whether the doorstop would defectively fall from a fully upright position. *See Niklas*, 1993 WL 177702, at *2 (highlighting that, even if the battery box was defective at a later point, "there is absolutely no evidence that the battery box was in a similar condition on the night of the accident"). As for prelude to this remedial request, Smith—who would enter the women's restroom at least once each workday—has no recollection of the doorstop posing a tripping hazard or anyone besides Plaintiff falling due to the doorstop. (Smith Dep., Doc. 16, Pg. ID 130, 133, 135-36, 138.)

Thus, for all these reasons, the hazard posed by the doorstop was open and obvious. The doorstop itself was observable to a reasonable individual and Plaintiff has not marshalled evidence to demonstrate a genuine dispute as to whether the doorstop defectively fell down from an upright position. Because a reasonable juror would not reach a different conclusion on this particular record, Defendant is entitled to summary judgment on Plaintiff's negligence claim.

## II.    Notice

Since the hazard posed by the doorstop was open and obvious, Defendant is entitled to summary judgment on this basis alone. *See Armstrong*, 99 Ohio St. 3d at 80. Defendant also brings an alternative theory for summary judgment: assuming that the danger posed by the doorstop was not open and obvious, Plaintiff's negligence claim nevertheless runs aground on a notice problem. (Reply, Doc. 18, Pg. ID 161-62.)

13

Specifically, Defendant argues for the first time in its Reply that it did not have notice of the purported defect regarding the doorstop. (*See* Reply, Doc. 18, Pg. ID 161-62.) Generally, arguments raised for the first time in a reply are not suitable for review because the opposing party does not have an opportunity to address the newly raised argument. *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008). That being said, a reply is an appropriate vehicle to address arguments raised through the opposing party's response. *See id.*; *McAfee v. DataX, Ltd.*, No. 1:25-CV-516, 2025 WL 3134687, at *4 (S.D. Ohio Nov. 10, 2025). Additionally, courts have recognized that a sur reply "may be allowed in the appropriate circumstances, especially '[w]hen new submissions and/or arguments are included in a reply brief, and a nonmovant's ability to respond to the new evidence has been vitiated.'" *Key v. Shelby Cnty.*, 551 F. App'x 262, 265 (6th Cir. 2014) (quoting *Seay v. Tenn. Valley Auth.*, 339 F.3d 454, 481 (6th Cir. 2003)); *Geiger v. Pfizer, Inc.*, 271 F.R.D. 577, 580-81 (S.D. Ohio 2010) (collecting cases); S.D. Ohio Civ. R. 7.2(a)(2). Here, the Court afforded Plaintiff an opportunity to file a sur-reply to address Defendant's line of reasoning concerning notice. (*See* 1/29/2026 Notation Order.) Plaintiff then filed a Sur-Reply (Doc. 19). Accordingly, Plaintiff's argument that Defendant's notice argument cannot be considered is not well taken.

In order for a business invitee to recover against a store owner for an unsafe condition, the invitee must establish one of the following:

1. That the defendant, through its officers or employees, was responsible for the hazard complained of; or

2. That at least one of such persons had actual knowledge of the hazard and neglected to give adequate notice of its presence or remove it promptly; or

14

3. That such danger had existed for a sufficient length of time reasonably to justify the inference that the failure to warn against it or remove it was attributable to a want of ordinary care.

*Hochstetler v. Menards*, 688 F. App'x 381, 383 (6th Cir. 2017) (quotation omitted); *see also Ebersole v. Toledo Hosp.*, 261 N.E.3d 1228, 1233 (Ohio Ct. App. 2025); *Rizek v. Wal-Mart Stores E., LP*, No. 5:23-CV-721, 2024 WL 4650908, at *4 (N.D. Ohio Nov. 1, 2024) (applying this standard to latent defects).

Plaintiff argues that Defendant had "constructive knowledge of the defective doorstop either via a reasonable inspection of the [women's] restroom or through its [employees'] multiple encounters with the malfunctioning doorstop." (Sur-Reply, Doc. 19, Pg. ID 169.) But, as elucidated above, Plaintiff does not point to any admissible evidence that the doorstop would defectively fall from a fully upright position. Though the record includes a deposition from one of Defendant's former employees who entered the restroom at least once each workday, she did not recall personally experiencing a defective doorstop or learning about anybody else falling due to the doorstop. (Smith Dep., Doc. 16, Pg. ID 130, 135-36, 138.) Thus, the mere fact that Defendant's employees and other patrons may have encountered the same doorstop is not persuasive.

In any event, Defendant emphasizes that Plaintiff has not proffered any evidence as to how long the doorstop was defective before she fell. (Reply, Doc. 18, Pg. ID 162.) "If a plaintiff cannot show that a defendant had actual knowledge of an existent hazard, evidence as to the length of time the hazard had existed is necessary to support an inference that defendant had constructive notice." *Presley v. City of Norwood*, 36 Ohio St. 2d 29, 32 (Ohio 1973). "The dangerous condition must have existed for a sufficient time

15

reasonably to justify the inference that the failure to warn against it or remove it was attributable to a want of ordinary care." *Ebersole v. Toledo Hosp.*, 261 N.E.3d 1228, 1236 (Ohio Ct. App. 2025) (cleaned up). A plaintiff in such cases "cannot demonstrate a genuine issue of material fact" as to constructive knowledge "[w]ithout evidence of the length of time that the hazard existed." *Id.* at 1237 (collecting cases); *see also Ray v. Wal-Mart Stores, Inc.*, 993 N.E.2d 808, 824 (Ohio Ct. App. 2013) ("Without such evidence [of time], it is impossible to determine whether a premises owner should have discovered the hazard upon a reasonable inspection.").

The Sixth Circuit's decision in *Hutchison v. Lowes Home Centers, LLC*, No. 21-4048, 2022 WL 1773720 (6th Cir. June 1, 2022), is particularly instructive on this point. The plaintiff in that case brought an Ohio-based negligence claim after a stack of boards fell from a shelf and struck him. *Id.* at *1. Though the plaintiff claimed that the "hazardous condition was the location of the chain that was holding the board in place," the Sixth Circuit found that he offered only speculation and "did not muster any evidence showing that the placement of the retention chain was defective." *Id.* at *2. And, continuing its analysis under Ohio law, the Sixth Circuit determined that, in any event, the plaintiff failed to provide "any evidence about how long the display had been in its current state." *Id.* Accordingly, the plaintiff failed to show that the defendant "had constructive notice of an unreasonably dangerous condition." *Id.*

Other courts have reached similar conclusions. *See, e.g., Oeffner v. Marc Glassman, Inc.*, 2025-Ohio-1610, 2025 WL 1292722, at *6-7 (Ohio Ct. App. May 5, 2025) (declining to find constructive notice despite the plaintiff's argument that preventative maintenance

16

could have prevented the door from malfunctioning); *Ball v. New Era Golf BT Inc.*, 2022-Ohio-2125, 2022 WL 2236247, at *4-5 (Ohio Ct. App. June 21, 2022) (finding no constructive notice despite the plaintiff's argument equating the defendant's "failure to inspect and neglect of the bunker to constructive notice of the hazard"); *Dorsey v. Lowe's Home Ctrs., LLC*, No. 1:20-CV-2774, 2023 WL 2456587, at *19 (N.D. Ohio Mar. 10, 2023) (rejecting the plaintiff's argument that a forklift operator should have discovered that a splinter was missing from the pallet because the plaintiff merely speculated as to how long the defect had existed prior to the incident); *Myers v. Coshocton Vill. Inn & Suites*, No. 2:14-CV-981, 2016 WL 2853585, at *8 (S.D. Ohio May 16, 2016) (similar).

To be sure, some Ohio courts have explained that "where a party alleges harm arising from a latent defect, the appropriate inquiry focuses on whether a reasonable inspection would have revealed the defect," as opposed to "how long the defect was present." *Beck v. Camden Place at Tuttle Crossing*, 2004-Ohio-2989, 2004 WL 1277044, at *5 (Ohio Ct. App. June 10, 2004). To the extent that Plaintiff may be relying on this theory, she has not demonstrated a relevant latent defect given the lack of evidence regarding whether the doorstop would defectively fall from an upright position. *See Hidalgo v. Costco Wholesale Corp.*, 2013-Ohio-847, 2013 WL 936245, at *5 (Ohio Ct. App. Mar. 11, 2013); *Ray*, 993 N.E.2d at 816. Thus, Defendant is entitled to summary judgment.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment (Doc. 10). Accordingly, judgment is entered in favor of Defendant on Plaintiff's

17

negligence claim. Defendant's previously filed Motion for Summary Judgment (Doc. 7) is **DENIED AS MOOT**. This matter is **TERMINATED** from the Court's docket.

**IT IS SO ORDERED.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

By: _____
JUDGE MATTHEW W. McFARLAND